UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE SCOTTS COMPANY LLC,**

   **Plaintiff,**

 v.

**ACRONYM MEDIA, INC.,** *et al.***,**

   **Defendants.**

:

:

Case No. 2:25-cv-501
Chief Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

The Scotts Company LLC asserts seven claims against Acronym Media, Inc. and three Acronym employees (the "Individual Defendants") (collectively, "Defendants"). The Individual Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and all the Defendants filed a Partial Motion for Judgment on the Pleadings. (Mot., ECF No. 12.) Both motions are ripe for decision.

For the reasons below, the Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** and Defendants' Partial Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**.

## I. BACKGROUND[1]

Scotts and Acronym entered into a Master Services Agreement in July 2015. (Compl., ECF No. 1, ¶ 1; *id.*, Ex. 1.) Pursuant to the Agreement, the parties entered

---

[1] At this stage in the litigation, all well-pleaded factual allegations in the Complaint are taken as true. *See Bullington v. Bedford Cty.*, 905 F.3d 467, 469 (6th Cir. 2018). The following summary draws from the allegations in the Complaint and any documents integral to it.

separate statements of work which were then subject to the terms of the Agreement. (*Id.*, Ex. 1.) The overarching purpose of the Agreement was for Acronym to place advertisements and media services for Scotts and its affiliates on various media platforms, including Amazon. (*Id.*, ¶ 2.) Amazon, for example, issued invoices directly to Acronym, Acronym invoiced Scotts, and once Scotts paid Acronym, Acronym paid Amazon. (*Id.*, ¶ 4.) The last step in that sequence is the subject of this litigation.

Around March 2024, Acronym stopped paying Amazon but did not stop placing advertisements or charging Scotts. (*Id.*, ¶ 6.) Acronym hid this conduct from Scotts, and even represented that Amazon had been paid. (*Id.*, ¶¶ 6, 7.) After 65 invoices went unpaid, Amazon deducted the $8.6 million outstanding balance from Scotts' trade account. (*Id.*, ¶ 10.) According to Scotts, Acronym admitted that it did not pay the invoices but has yet to identify where the money went. (*Id.*, ¶ 12.)

## II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION[2]

### A.    Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for dismissal of a lawsuit when a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific

---

[2] The Individual Defendants' Motion to Dismiss "is an incorrect characterization of the filing given that they had previously filed their Answer." *Ruhl v. Spear*, No. 2:11-cv-1026, 2012 WL 1537594, *1 (S.D. Ohio Apr. 30, 2012) (Frost, J.). The motion is "actually a motion for judgment on the pleadings." (*Id.*) Even so, because they preserved the personal jurisdiction defense in their answer, the same standard applies. (*See generally id.*)

facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If a court rules on a Rule 12(b)(2) motion before trial, "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citation omitted). "[T]he decision whether to grant discovery or an evidentiary hearing before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 434 (6th Cir. 2006) (citation omitted). The Court concludes that neither discovery nor an evidentiary hearing are necessary.

When a court resolves a Rule 12(b)(2) motion based on "written submissions and affidavits …, rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Theunissen*, 935 F.2d at 1458). A plaintiff can meet its burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen*

*Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal quotation and citation omitted).

    **B.    Analysis**

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (citing *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021)). Here, "two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Id.* at 660–61 (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012)). Because Scotts has not shown that personal jurisdiction is proper under Ohio's long-arm statute, the Court does not address the Due Process Clause of the Fourteenth Amendment.

        1.    **Ohio's Long-Arm Statute**

There are two types of personal jurisdiction—general and specific—both of which are recognized under Ohio's long-arm statute and are adequate to confer jurisdiction over a defendant. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court addresses each in turn.

*General Jurisdiction*. Ohio's long-arm statute was amended in 2021 to include subsection (C), "a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(c). This Court has interpreted the 2021 amendment to provide for general jurisdiction under Ohio law. *Privott v. Revco*

4

*Sols., Inc.*, No. 2:24-cv-413, 2024 WL 5170123,*2 (S.D. Ohio Dec. 19, 2024) (Morrison, J.).

"If a court has general jurisdiction over a defendant, it can adjudicate any claims involving that defendant, regardless of where the cause of action arose." *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924. "As a general rule, the place where a person lives is taken to be his proper domicile until the evidence establishes the contrary." *Frank v. PNC Bank, N.A.*, No. 1:19-cv-0866, 2020 WL 1041187, *3 (S.D. Ohio Mar. 4, 2020) (Bowman, M.J.). None of the Individual Defendants live in Ohio. This is dispositive of the general jurisdiction inquiry.

Nevertheless, Scotts argues that individuals, like corporations, can be deemed "at home" in a forum state where their contacts are "systematic and continuous." (ECF No. 22, PAGEID# 366). But this seldomly used alternative ground for general jurisdiction is reserved for "an 'exceptional case,' [where] *a corporate defendant's* operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)) (emphasis added). The Court is unaware of (nor has Scotts identified) any authority expanding this rule to individuals, and it will not do so here.

*Specific Jurisdiction*. Ohio's long-arm statute provides nine bases by which a court may exercise specific personal jurisdiction over a person. Ohio Rev. Code § 2307.382. Scotts relies on only two:

> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

*Id.* Neither apply here.

Scotts argues that section (A)(3) is satisfied for two reasons. First, the Individual Defendants failed to satisfy their "contractual executive obligations" which would have necessitated traveling to Ohio. (ECF No. 22, PAGEID# 369.) And second, the Individual Defendants "frequently communicated with Scotts' associates in Ohio by phone and email." (*Id.*) But "[s]ection (A)(3) does not confer personal jurisdiction when all of the alleged tortious acts took place outside of Ohio." *Heinrichs v. Dunn*, No. 2:13-cv-00929, 2014 WL 3572404, *4 (S.D. Ohio July 21, 2014) (Marbley, J.). Just because the Individual Defendants should have traveled to Ohio (but never did) does not mean that the alleged "omission" took place in Ohio. Likewise, phone calls and emails to Ohio (but made from outside of Ohio) are insufficient to satisfy section (A)(3). *Id.*

To satisfy section (A)(4), Scotts relies on the volume of emails sent by the Individual Defendants combined with their oversight of Acronym's contractual obligations. (ECF No. 22, PAGEID# 371.) But neither emails nor oversight of company activity in *this* transaction alone suggest that Defendants 1) regularly do

6

or solicit business in Ohio; 2) engage in a persistent course of conduct in Ohio; or 3) derive substantial revenue from goods used or consumed or services rendered in Ohio. Ohio Rev. Code § 2307.382(A)(4); see *3M Company v. Premium Contractor Sol., LLC*, No. 3:20-cv-443, 2021 WL 3737908, *6 (S.D. Ohio Aug. 24, 2021) (Rose, J.) (finding sections (A)(4) and (A)(5) inapplicable when there is a lack of evidence to show that defendants regularly conduct business in Ohio, engage in a persistent course of conduct in Ohio, or derive substantial revenue from goods used or services rendered in Ohio).

The Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 12) is **GRANTED**.

### III. PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS

Acronym moves for partial judgment on the pleadings as to five of Scotts' claims: Count I for fraud; Count II for constructive fraud and breach of fiduciary duty; Count IV for conversion; Count VI for negligent hiring, training, instruction, and supervision; and Count VII for unjust enrichment and quantum meruit.

#### A. Legal Standard

A motion for judgment on the pleadings made under Federal Rule of Civil Procedure 12(c) is analyzed in the same manner as a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). To overcome such a motion,

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A motion for judgment on the pleadings should be granted when there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *Tucker*, 539 F.3d at 549.

      B.    Analysis

          1.    Fraud

Fraud claims are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b) (requiring that the circumstances constituting fraud must be pleaded "with particularity"). "At a broad level, 'Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud." *New London Tobacco Market, Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (citations omitted). "More specifically, the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id*. (citing *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)).

The Complaint states that in or around "March 2024," Acronym "represented to Scotts that it was paying and/or had paid invoices to Amazon that it had not paid to Amazon." (Compl., ¶ 8.) But Scotts does not identify the speaker. Instead, Scotts

8

only alleges "that [Acronym] made fraudulent representations, but that is not enough." *New London Tobacco Market, Inc.*, 44 F.4th at 411.

Scotts agrees that the speaker was never identified and attempts to remedy its deficiency by providing email communications that were not attached to the Complaint. (Resp., PAGEID# 398.) But by having to point outside the complaint to find the name, Scotts implicitly concedes that it did not identify that person in the complaint itself, which is enough to make its pleading defective.

The Partial Motion for Judgment on the Pleadings is **GRANTED** as to Count I.

### 2. Constructive Fraud and Breach of Fiduciary Duty

Scotts' Count II, brought as one claim, includes two independent causes of action: constructive fraud and breach of fiduciary duty. "Constructive fraud may be found from the relation of the parties to a transaction, or from circumstances and surroundings under which it takes place." *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 823 (S.D. Ohio 2007) (Graham, J.). Thus, a constructive fraud claim requires "some peculiar confidential relationship between the parties which affords the power and means to one to take undue advantage of or exercise und[ue] influence over another." *Id*.

In turn, a breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting. *Ponder v. Bank of Am., N.A.*, No. 1:10-cv-00081, 2011 WL 8307207, *4 (S.D. Ohio Mar. 8, 2011) (Dlott, J.). "A fiduciary

9

relationship exists when special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Grace E. Moore Great-Grandchildren Tr. of 2006 v. Gulfport Appalachia, LLC*, No. 2:24-cv-2231, 2024 WL 5237678, *2 (S.D. Ohio Dec. 27, 2024) (Morrison, J.) (cleaned up). "Absent special circumstances, an arm's-length commercial transaction does not establish a fiduciary relationship." *Id*.

Both claims turn on whether Scotts and Acronym had a peculiar confidential or fiduciary relationship. Scotts asserts that "[a]s an intermediary between Scotts and Amazon, Acronym served as a fiduciary for Scotts' funds with respect to payments to Amazon." (Compl., ¶ 21.) But the only relationship between the parties alleged in the Complaint is a contractual one. In fact, the Agreement itself disclaims any special relationship, stating that it:

> … does not create, and shall not be deemed to create, a partnership, joint venture, agency or any similar relationship or arrangement between the parties hereto. In carrying out its duties and performing its obligations hereunder, each of the parties hereto is acting as an independent contractor, and the employees, subcontractors, agents, or other representatives of one of them shall not be deemed to be employees, subcontractors, agents, or other representatives of the other. Neither party shall act or represent itself, directly or by implication, as an agent, of the other or in any manner assume or create any obligation on behalf of, or in the name of the other.

(*Id.*, Ex. 1 at 10.2, PAGEID# 69.) Because the Complaint does not reference any relationship outside the Agreement, both claims fail.

The Partial Motion for Judgment on the Pleadings is **GRANTED** as to Count II.

### 3. Conversion

The elements of a conversion claim under Ohio law are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (Graham, J.). But a claim for conversion of money requires that the money has been "earmarked" or is specific money capable of identification, such as money in a bag. *Id.*; *RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 36 N.E.3d 757, 765–66 (Ohio App. Ct. 2015). An obligation to merely make good a certain *sum* of money cannot form the basis of a conversion claim. *RAE Assocs.*, 36 N.E.3d at 765–66; *Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-CV-135, 2018 WL 527285, at *10 (S.D. Ohio Jan. 24, 2018) (Smith, J.).

Scotts has not alleged that Acronym is in possession of any specifically identifiable money; it has alleged that Acronym is in possession of a specifically identifiable *amount* of money. This distinction is fatal to Scotts' claim.

The Partial Motion for Judgment on the Pleadings is **GRANTED** as to Count IV.

### 4. Negligent Hiring, Training, Instruction, and Supervision

The elements of a claim for negligent hiring, training, and supervision are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's

11

injuries." *Bricker v. R&A Pizza, Inc.*, 804 F. Supp. 2d, 615, 622 (S.D. Ohio 2011) (Watson, J.); *Farm Bureau Gen. Ins. Co. of Mich. v. Schneider Natl. Carriers*, 552 F. Supp. 3d 750, 760–61 (S.D. Ohio 2021) (Sargus, J.). Scotts has failed to plead any of these elements. Specifically, Scotts has not identified which employee was incompetent, how that employee was incompetent, and whether Acronym had actual or constructive knowledge of such incompetence. Without such basic factual allegations, the claim falls short of plausible.

The Partial Motion for Judgment on the Pleadings is **GRANTED** as to Count VI.

### 5. Unjust Enrichment and Quantum Meruit[3]

"Unjust enrichment operates in the absence of an express contract." *Forsman v. Silverstein*, No. 2:22-cv-4415, 2025 WL 240920, *12 (S.D. Ohio Jan. 17, 2025) (Morrison, J.) (citations omitted). As such, Acronym argues that Scotts' unjust enrichment claim fails because the parties' relationship is governed by an express contract. (Mot., PAGEID# 117.) But according to Scotts, Acronym has "denied certain aspects of the contract such as the Statements of Work and invoicing." (ECF No. 23, PAGEID# 408.) Thus, "the scope of the parties' contract remain[s] to be developed in discovery, … [and] it would be premature to dismiss [the] unjust enrichment claim at this stage in the litigation." *See, e.g.*, *Highman v. Gulfport Energy Corp.*, No. 2:20-cv-1056, 2020 WL 6204344, *3 (S.D. Ohio Oct. 22, 2020) (Morrison, J.) (citations omitted).

---

[3] Scotts initially included a claim for detrimental reliance but abandoned that claim in its response. (*See* Resp., PAGEID# 408.)

The Partial Motion for Judgment on the Pleadings is **DENIED** as to Count VII.

IV. **CONCLUSION**

For the above reasons, the Individual Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 12) is **GRANTED.** Defendants' Partial Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED in part and DENIED in part.** Defendants are entitled to judgment on Counts I, II, IV, and VI of the Complaint.

        **IT IS SO ORDERED.**

        /s/ Sarah D. Morrison
        **SARAH D. MORRISON, CHIEF JUDGE**
        **UNITED STATES DISTRICT COURT**